**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| CHARLES EDWARD YOUNG, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> THE CITY OF DES MOINES, IOWA, : <br> Des Moines Police Officer CODY : <br> GRIMES, Des Moines Police Officer : <br> SEAN O'NEILL, Des Moines Police : <br> Officer PARKER DAY, & Des Moines : <br> Police Officer ELLIOT NESS : <br> : <br> Defendants. : | CIVIL ACTION No.: 4:18-cv-00089 <br><br> JURY TRIAL DEMANDED |

**FIRST AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Plaintiff Charles Edward Young brings this civil rights lawsuit for a violation of rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

One of the cornerstones of our constitutional democracy is the right of citizens to be free from the unreasonable and unwarranted brutality of police officers whether in the course of making a lawful arrest or those officers who take exception when a citizen asserts their constitutional rights or refuses to comply with an officers unlawful or unreasonable commands. In addition, Mr. Young has the right to expect that the City of Des Moines not be deliberately indifferent to his constitutional rights by failing to train and/or adequately discipline police officers who not only possess objectively questionable and unreasonable judgment but also have a history of misconduct, illegal acts, and/or violating the constitutional rights of others. Finally, Mr. Young has the constitutional right to express his distaste or disgust with the way his public

officials discharge their public duties – in this case responding to a 911 call for help – and to not suffer retaliation in the form of assault for asserting that constitutional right.

And to make matters ever worse, months after Mr. Young filed this federal lawsuit, two officers with the Des Moines Police Department knocked on Mr. Young's door one evening after work and falsely arrested him in retaliation for the filing of this lawsuit.  Mr. Young spent two nights in the Polk County Jail and was discharged on the third day without charges, without probably cause to believe that Mr. Young had committed a new criminal offense, and without even seeing a judge.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Verified Complaint under the First, Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within the District.

## PARTIES

3. Plaintiff Charles Edward Young ("Young") is a citizen of the United States and at all relevant times was a resident of Des Moines, Polk County, Iowa.

4. Defendant Cody Grimes ("Grimes") was at all times relevant to this Complaint a police officer with the City of Des Moines Police Department.  In his capacity as a police officer, Defendant Grimes had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws.  Defendant Grimes is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and

course of his employment with the City of Des Moines and the City of Des Moines Police Department. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa and the City of Des Moines.

5. Defendant Sean O'Neill ("O'Neill") was at all times relevant to this Complaint a police officer employed by the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant O'Neill had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant O'Neill is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines Police Department. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa and the City of Des Moines.

6. Defendant Parker Day ("Day") was at all times relevant to this Complaint a police officer employed by the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant Day had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant Day is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines Police Department. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa and the City of Des Moines.

7. Defendant Elliot Ness ("Ness") was at all times relevant to this Complaint a police officer employed by the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant Ness had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant Ness is sued in

his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines Police Department. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa and the City of Des Moines.

8. Defendant City of Des Moines, Iowa ("Des Moines") is a municipal corporation existing and operating pursuant to the laws of the State of Iowa. The City of Des Moines is the public employer of the other Defendants in this matter and has a legal responsibility to operate according to the laws of the United States and the State of Iowa, including, but not limited to, the United States Constitution.

## FACTUAL ALLEGATIONS

**Charles Edward Young and the Call to 911**

9. Charles Edward Young is a sixty-three years old man who currently resides in Des Moines, Iowa and works at the downtown Marriot.

10. Young is originally from Tupelo, Mississippi.

11. Young is also a veteran of the United States Armed Forces having served his country honorably in the United States Army from 1972 till 1976.

12. Young served overseas in Okinawa, Japan and was stationed stateside in Hawaii among other places.

13. In 1976, Young was honorably discharged from the Army and, while on a vacation, passed through Des Moines, Iowa, liking it well enough to make the decision to move here permanently that same year.

14. On March 20th of 2016, Young resided at was the was the lease holder of Unit #321 of the Jefferson Apartments at 1519 Grand Avenue, Des Moines, Iowa, 50309.

15. Unit #321 is a one bedroom, one bathroom unit on the 3rd floor of Jefferson Apartments cattycorner from the west end of the Papajohn Sculpture Garden.

16. In the early morning hours of March 20, 2016, Young and a friend, Derrick Smith were at the apartment, along with two other individuals, who although staying at the apartment temporarily, did not permanently reside at the apartment.

17. Smith is a double amputee and is permanently confined to a wheelchair.

18. Smith often visited Young and the two would socialize over a few beers at Young's apartment which is exactly what they were doing the evening of March 20, 2016.

19. Young knew the two other individuals only as Junior and Junior's girlfriend.

20. Young had allowed the individuals to stay at the apartment for a few days since they were down on their luck and it was cold a March in Des Moines.

21. On the evening of March 20th, Young and Smith discussed the situation with the guests and after they engaged in some unruly behavior, Young had decided that his generosity had run its course and he asked Junior and his girlfriend to leave his apartment.

22. Despite the request, Junior and his girlfriend refused to vacate Young's apartment and, in fact, told Young they would not be leaving.

23. After requesting and being rebuffed again, Young placed a call to 911 and asked for assistance in having the individuals removed.

24. Des Moines police officer Cody Grimes was the first to respond to the dispatch call regarding the apartment at 1519 Grand Avenue that evening

**The History & Temper of Des Moines Police Officer Cody Grimes**

25. At the time he arrived at Young's apartment on the evening of March 20, 2016, Grimes was a Des Moines police officer assigned to the traffic division, but Grimes was not always a

traffic cop and had a colorful history within and outside the department leading to this traffic unit assignment.

26. After attendance at the Iowa Law Enforcement Academy, Grimes first joined the Des Moines Police Department in approximately 2007.

### a. Grimes Fires a Shot at KCCI Photojournalist

27. Grimes was eventually assigned to patrol duty and on the evening of Wednesday, October 13, 2010, Grimes was tripped to a potential "shots fired" call at the KCCI studios on 9th Street in Des Moines.

28. The call had been placed after several KCCI employees heard several loud bangs outside the studio windows – instead of gun shots, the bangs turned out to be someone throwing rocks at the studio windows.

29. Grimes arrived at the scene shortly after KCCI had finished its 10 PM evening newscast.

30. KCCI Photojournalist Spencer Vaughn was outside the studio speaking with police dispatch when Grimes abruptly arrived on scene.

31. Noticing Grimes, Vaughn attempted to point out to Grimes the direction he believed the perpetrator fled in.

32. But instead of assessing or understanding the on-the-ground situation, Grimes exited his patrol vehicle and almost immediately fired a shot at Vaughn apparently believing Vaughn to be the perpetrator.

33. Luckily for Vaughn, Grimes was a poor shot and Grimes bullet narrowly missed Vaughn.

34. As a result of this on-duty incident, Grimes was placed on two weeks paid administrative leave but faced no substantive discipline from the Des Moines Police Department.

### b. Grimes Viciously Assaults a Groom at his Wedding

35. And then on July 23, 2011, Cody Grimes responded to a request for back up from fellow Des Moines Police Officer Andrew Phipps who was working an off-duty security detail at the wedding reception of John and Khambla Twombly.

36. Officer Phipps asked for backup to respond when an interaction turned briefly physical between John Twombly and one of the wedding reception guests in which Twombly was asking the guest to stop acting inappropriately with the female attendees.

37. Grimes responded to Phipps calls and immediately upon entering the wedding reception tent grabbed Twombly and slammed him into a wall.

38. Grimes then forcibly slammed Twombly to the ground, and along with Phipps, Grimes forcibly restrained Twombly.

39. Grimes held Twombly's face to the ground with one hand and punched Twombly five times in the face with the other, fracturing his right orbital bone in two places, and causing Twombly to lose consciousness.

40. In an attempt to cover up his misconduct, Grimes subsequently charged Twombly with assault on a peace officer and interference with official acts.

41. Twombly was later acquitted of those charges following a criminal trial.

42. A complaint was lodged against Grimes with the Des Moines Police Department regarding the Twombly assault and the Department conducted an internal investigation.

43. Despite the unreasonable, vicious assault on Twombly, the Department's investigation determined no wrongdoing by Grimes and he was immediately put back into contact with the general public.

44. In 2013, Twombly filed a civil rights lawsuit against Grimes, the City of Des Moines and others alleging excessive force and other civil rights violations.

45. In February of 2014, a confession of judgment was entered against Grimes and the City of Des Moines in the Southern District of Iowa for $75,000.

### c.  Grimes Assaults Girlfriend and Pleads Out

46. Grimes was then arrested on December 27, 2013 for domestic abuse assault causing injury and fourth degree criminal mischief.

47. After an argument, Grimes had choked his girlfriend, thrown her down a flight of stairs, and then trapped her in the kitchen.

48. On the eve of Grimes' trial for the domestic abuse charge, Grimes was allowed to plead guilty to the criminal mischief charge and take an abusive behavior class and the domestic abuse charge was dismissed.

49. If Grimes had been convicted of the domestic abuse charge, he would have been unable to lawfully possess a firearm and his career in law enforcement would have been over.

50. Despite his continuing violent behavior, prosecutors inexplicably allowed the plea to the lesser charge.

51. Grimes' ex-girlfriend was so afraid of Grimes and his temper, however, that after the plea bargain she moved out of the state to avoid Grimes.

### d.  Grimes Fired & Reinstated

52. Following Grimes domestic violence incident, the Des Moines Police Department did an internal review, and on June 3, 2014, fired Grimes for policy violations, standard of conduct failures and a failure to obey laws.

53. The City understood Grimes firing would be scrutinized by the Des Moines Civil Service Commission and that the Commission has a well-documented history of reinstating officers that had been fired for misconduct.

54. Despite this knowledge, the City did not dot their t's and cross their i's and their firing of Grimes was based exclusively on the December 27, 2013, domestic violence incident with his girlfriend and not on the totality of the misconduct conducted by Grimes while on the job.

55. Specifically, the City of Des Moines to not include the Twombly assault and the KCCI shooting in its reasons for the firing of Grimes.

56. This failure on the part of the City of Des Moines set Grimes on a collusion course with Young when unsurprisingly, the Civil Service Commission overturned Grimes firing in January of 2015, and reinstated him to the force saying that firing Grimes was too severe a punishment for a single instance of misconduct.

57. Despite their knowledge of Grimes temper and violent tendencies, the City did not assign Grimes to desk duty or attempt to work out a settlement with Grimes but instead allowed the officer to work with the traffic unit of the Department where he would be in contact with citizens and would occasionally respond to emergency calls.

58. In was on one of these calls that Grimes encountered Young.

**The March 20, 2016 Incident**

59. After being alerted by dispatch, Grimes arrived at 1519 Grand Avenue, Unit 321 at approximately 2:00 AM.

60. Grimes arrived on scene alone and headed up to the third floor of the Jefferson Apartments to find Young's unit.

61. Immediately behind Grimes was Des Moines Police Officer Sean O'Neill.

62. In March 2016, O'Neill was a newcomer to the force having joined the Department in April of 2015.

63. Grimes arrived at the door to Young's apartment first with O'Neill a few steps behind him.

64. Young informed the officers that Junior and his girlfriend were in the bedroom of Young's apartment and that despite Young's pleas for them to vacate, the couple remained in Young's bedroom.

65. Young informed Grimes and O'Neill that he wanted the couple removed from his apartment.

66. While Young and Derrick Smith remained in the living room of the apartment, Grimes and O'Neill went to the bedroom and spoke with the couple.

67. A few minutes later, the officers returned to entryway of the apartment and informed Young that the couple were refusing to leave because they said they had nowhere to go.

68. Grimes informed Young that since he had invited them to stay at his apartment, he was unable to force them to leave and that if Young still wanted them removed, he would have to resort to filing a civil action against the couple.

69. Young reiterated to Grimes and O'Neill that it was his apartment and his name was on the lease and he did not want the couple staying in the apartment anymore.

70. Grimes again informed Young that the officer were unable under the law to force the couple to leave even though Chapter 716 of the Iowa Code defined the couple's behavior as trespass and explicitly gave Grimes the ability as a peace officer the ability to ask them to leave and arrest them for trespass if they refused.

71. Grimes, however, still refused to get involved and told Young that he would have to solve the problem on his own.

72. O'Neill turned and exited the entry way and apartment with Grimes following closely behind him.

73. Irritated by the officers' refusal to follow the law and ask the couple to leave, Young watched the officers exiting and shouted at them to "get the fuck out of my house."

74. With the officers outside the apartment and in the building's hallway, Young slammed the door behind them.

75. Angered by Young's profanity and questioning of his authority, Grimes forcefully kicked the door open with his hell and immediately re-entered the apartment.

76. Grimes slammed Young to the entryway floor with Young's feet facing the doorway and his head facing the living room beyond the entry. .

77. Officer O'Neill stepped into the apartment directly behind Grimes and remained standing behind Grimes as the officer landed on top of Young.

78. Young landed face down on the entryway floor with his arms and hands pinned underneath him and Grimes squarely on top of him.

79. While still holding Young on the floor, Grimes began knee-striking Young in the rib cage a number of times all the while screaming for Young to stop resisting.

80. While Grimes continued to assault the non-resistant Young, O'Neill stood by and watched it happen without once asking Grimes to stop or once attempting to physically restrain or remove Grimes from Young.

81. O'Neill could clearly see what Grimes was doing to Young but continued to stand by and let it happen.

82. Young's arms were pinned under his body weight and he was not resisting but nevertheless, Grimes continued to strike Young in the ribs in order to wantonly inflict pain in retaliation for Young's audacity in not submitting to Grimes's authority.

83. After a number of knee strikes, Grimes removed his weight from Young's back and handcuffed Young's hands behind his back.

84. Grimes stood Young up and placed him under arrest for Assault on a Peace Officer and Interference with Official Acts.

85. As soon as he was stood up, Young immediately felt a sharp pain on the left side of his rib cage and told Grimes and O'Neill that he believed his was injured.

86. Young was transported to Broadlawns for evaluation where x-rays revealed that Grimes knee strikes had caused two rib fractures.

87. Young was later acquitted by a twelve member jury of the alleged assault on Grimes but was inexplicably found guilty by Polk County District Associate Judge Brandt of the simple misdemeanor Interference With Official Acts charge.

**The August 20, 2018 Retaliatory Arrest**

88. On March 19, 2018, Young filed this instant action against the Defendants in the Southern District of Iowa, alleging various civil rights violations including excessive force and first amendment retaliation.

89. On April 20, 2018 while entering the Federal Building at 210 Walnut Street to attending a meeting at the Veteran's Administration, Young was cited for a misdemeanor violation of a sign ordinance that could subject him to a $105.00 fine..

90. Exactly four months later, on August 20, 2018, Young had just returned home after work for the day when two uniformed police officers knocked on the door of Young's second floor apartment.

91. Young answered the door and was startled by the sight of the police officers.

92. One of the uniformed police officers at Young's door was Des Moines officer Parker Day.  Based on information and belief, the other uniformed officer was Des Moines Police Officer Elliot Ness.

93. The officers ordered Young to turn around because they were placing him under arrest.

94. Young attempted to question the officers about why he was being arrested and Day and Ness only response was that Young was being arrested for "assault."

95. What assault, Young asked, do you have a warrant?"

96. Neither Day nor Ness would specify further the basis for the alleged charges against Young and neither indicated nor showed Young an arrest warrant.

97. Day and Ness knew there was no active warrant for Young's arrest for current or past charges, and Day and Ness did NOT witness Young commit any criminal acts.  Therefore, it was not reasonable for them to place Young under arrest on the afternoon of August 20. 2018.

98. Day and Ness next stepped into Young's apartment, turned Young around, and placed his hands behind his back to handcuff him.

99. Day placed Young in a patrol vehicle and transported him to the Polk County Jail ("PCJ") where he was booked into custody at approximately 4:05 PM.

100.     Day told PCJ booking staff that Young was being booked for assault on a case number that Day knew or should have known was resolved was over two years old, revolved

around an alleged assault on current Defendant Cody Grimes, and ended with Young's acquittal on that assault charge back in 2016.

101. Day also told booking staff that there was a United States Marshal Service detainer on Mr. Young even though there was no such detainer and Day knew there was no such detainer that warranted holding Young at PCJ.

102. Day and Ness knew that Young was accusing their fellow Officers Cody Grimes and Sean O'Neill of misconduct and violating his constitutional rights either through conversations with the Grimes, O'Neill or other officers or because Young's lawsuit received press coverage at the time of filing.

103. Day and Ness knew that any arrest of Young would be scrutinized and that they had a constitutional obligation to vet that arrest carefully to avoid even the appearance of it being false and retaliatory.

104. The City and/or Des Moines Police Department had and have no policy of tracking lawsuits against it and requiring officers to reconcile arrestees against such lists to ensure the legitimacy of arrests.

105. The falsity of Young's arrest was apparent to the officers at the scene and, in fact, when even later when Ness ran a NCIC check on Young to attempt to justify the false arrest, no hits were returned and Ness noted in the remarks that "subject is jail, is this valid?"

106. Young was placed in the federal side on custody at PCJ which did not and does not allow access to Young's jail stay through way of the PCJ web portal and therefore family and friends could not locate Young at PCJ.

107. The main book sheet at the jail contained handwritten notes by a member of the PCJ staff noting that the warrant in SRCR293799 "was old. He was found not guilty. USMS has no hold as it was a summons to appear, <u>not</u> a warrant."

108. Despite all of this and despite the patently obvious falsity and retaliatory nature of Young's arrest, Young spent almost 48 hours in PCJ.

109. After spending two nights in PCJ, Young asked for a correctional officer ("CO") early on the morning of August 22, 2018.

110. Young told the Co there was no reason for him to be in jail and asked when he would be appearing before a judge to address the "charges" against him.

111. The CO told Young that he would be appearing before the judge at PCJ at 8:30 that morning.

112. Unfortunately, 8:30 came and went, and then 9:30 came and went and Young was never retrieved to appear before the judge.

113. Finally, Young summoned the CO again and asked what was going on, why he had not seen the judge yet, and why he was still being held when he had not done anything wrong.

114. The CO told Young that he would not be appearing before the judge but would instead be processed out.

115. At 10:20 AM on Wednesday, August 20, 2018, Young was processed out of PCJ without seeing any judicial officer, without an order of the court dismissing any "charges" and, in fact, without any "charges" ever being filed against Young.

116. This lack of charges and lack of seeing a judicial officer just confirms the impropriety and retaliatory nature of the arrest of jailing of Young.

117. When Young returned to his apartment after his release from PCJ, he found a copy of a summons stuck in his doorway, summoning him to the federal courthouse on October 19, 2018, to answer to the April 20, 2018, citation he received at the federal building.

## CAUSES OF ACTION

### Count I
### Fourth Amendment (42 U.S.C. § 1983)
### (Excessive Force)
### Plaintiff v. Defendants Grimes & City of Des Moines

118. Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

119. The actions of Defendant Grimes in unreasonably throwing Young to the ground and repeatedly kneeing Young in the rib cage to intentionally inflict pain violated Young's clearly established right to be free from the use of excessive, unreasonable and unjustified force against his person under the Fourth Amendment to the United States Constitution.

120. Defendant City of Des Moines showed deliberate indifference to Young's clearly established right to be free from excessive force under the Fourth Amendment by failing to properly train and/or supervise or discipline Grimes on past incidents of excessive force and/or violence and despite the city's knowledge that Grimes has a propensity for violence and anger management problems and uses unreasonable and excessive force against members of the general public.

### Count II
### Fourth Amendment (42 U.S.C. § 1983)
### (Failure to Intervene)
### Plaintiff v. Defendant O'Neill

121. Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

122. Defendant O'Neill's failure to intervene to prevent or stop Officer Grimes's use of force as described in the preceding paragraphs violated Young's clearly established right to be free from the use of excessive, unreasonable and unjustified force against his person under the Fourth Amendment to the United States Constitution.

### Count III
### First Amendment (42 U.S.C. § 1983)
### First Amendment Retaliation
### Plaintiff v. Defendants Grimes and O'Neill

123. Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

124. The actions of Defendants Grimes and O'Neill in subjecting Young to an assault and excessive force for engaging in his constitutionally protected right to express his belief that Grimes and O'Neill were not doing their job violated Young's First Amendment right to be free from retaliation for the exercise of his constitutional right to engage in protected speech critical of his government officials.

### Count IV
### Negligent Hiring, Retention & Supervision
### Plaintiff v. Defendant City of Des Moines

125. Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

126. Defendant City of Des Moines hired, retained and failed to properly supervise Defendant Grimes despite their knowledge of his past misdeeds within and outside the force.

127. In addition, it was negligent or reckless of Defendant City of Des Moines to fail to terminate and/or properly supervise Defendant Grimes after the 2011 assault on Twombly and after Grimes 2013 assault on his girlfriend, especially in light of the fact that Defendant Grimes later assaulted Young.

128.     Without the City of Des Moines' negligent or reckless conduct in hiring, retaining and failing to supervise Defendant Grimes, Young would not have suffered the assault at the hands of City of Des Moines employees and would not have been injured as a result.

### Count V
### Assault & Battery
### Plaintiff v. Defendant Grimes

129.     Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

130.     By repeatedly knee striking Young in the ribs, Defendant Grimes committed assault & battery upon Young.

131.     Young suffered physical injuries, humiliation, emotional distress, pain and suffering, and medical expenses as the sole proximate result of the assault and battery committed by Defendant Grimes.

132.     The acts of Defendant Grimes in committing assault and battery were willful, wanton and reckless and Young is entitled to the recovery of punitive damages.

133.     The willful, wanton and reckless conduct of Defendant Grimes was directed at Young as an individual.

### Count VI
### First Amendment (42 U.S.C. § 1983)
### First Amendment Retaliation
### Plaintiff v. Defendants Day, Ness & City of Des Moines

134.     Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

135.     The actions of Defendants Day, Ness and City of Des Moines in subjecting Young to a false arrest for engaging in his constitutionally protected right to file a federal lawsuit against Des Moines Officers and the City of Des Moines and violated Young's First Amendment

right to be free from retaliation for the exercise of his constitutional right to petition his government for redress of grievances.

## COUNTS VII
## 42 U.S.C. § 1983 – CONSTITUTIONAL FALSE ARREST– DEFENDANTS DAY, NESS & CITY OF DES MOINES

120.   Plaintiff incorporates by reference the allegations of the proceeding paragraphs as though set forth at length herein.

121.   Young has a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizure of his person (false arrest), a right Defendants violated when, claiming to act under proper legal authority, they arrested Young or allowed Young to be arrested without any probable cause or reasonable basis for believing that Young committed an assault or committed any other crime in the state of Iowa.

WHEREFORE, Plaintiffs respectfully request:

   a. Compensatory damages;

   b. Punitive damages;

   c. Reasonable attorney's fees and costs; and

   d. Such other and further relief as may appear just and appropriate.

Plaintiffs hereby demand a jury trial as to all claims stated in this Complaint.

Thursday, September 27, 2018

Respectfully submitted,

*s/Glen S. Downey*
Glen S. Downey          AT0012428

s/Nathan A. Mundy
Nathan A. Mundy         AT0009065

DOWNEY & MUNDY LAW OFFICES, PLLC

303 East Court Avenue  
Des Moines, IA, 50309  
515-288-1552  
glen@downeymundy.com  
nathan@downeymundy.com  