**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| CHARLES YOUNG,<br><br>   Plaintiff,<br><br>vs.<br><br>CITY OF DES MOINES, IOWA & DES MOINES POLICE OFFICERS CODY GRIMES, SEAN O'NEILL, PARKER DAY, & MATTHEW GALLAHER.<br><br>   Defendants. | No. 4:18-CV-00089-JAJ<br><br><br>**ORDER** |

   Plaintiff Charles Young brought this action on March 19, 2018 in a five-count Complaint against the City of Des Moines and Des Moines Police Officers Cody Grimes and Sean O'Neill [Dkt. No. 1]. The Complaint was amended on October 4, 2018 to include Des Moines Police Officers Parker Day and Matthew Gallaher and to add two counts. [Dkt. No. 26] Count I alleges that Defendants Grimes and the City of Des Moines violated Young's Fourth Amendment rights to be free from the use of excessive, unreasonable, and unjustified force. Count II alleges that Defendant O'Neill failed to intervene to prevent or stop Defendant Grimes' actions as alleged in Count I. Count III alleges that Defendants Grimes and O'Neill violated Young's First Amendment right to be free from retaliation for the exercise of his constitutional right to engage in protected speech critical of government officials. Count IV alleges negligent hiring, retention, and supervision against the City of Des Moines. Count V alleges assault and battery against Defendant Grimes. Count VI alleges that Defendants Day, Gallaher, and the City of Des Moines violated Young's First Amendment rights by subjecting him to a false, retaliatory arrest. Count VII alleges that Defendants Day, Gallaher, and the City of Des Moines violated Young's Fourth and Fourteenth Amendment rights by subjecting him to an unreasonable seizure of his person.

   This matter comes before the Court pursuant to Defendants' March 1, 2019 Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. [Dkt. No. 31 (filed by Defendants the City of Des Moines, Parker Day, Matthew Gallaher, and Sean O'Neill); Dkt. No.

35 (filed by Defendant Cody Grimes)]. Plaintiff resisted the motion on April 4, 2019. [Dkt. No. 43]. Defendants replied separately to the resistance on April 29, 2019 and April 30, 2019. [Dkt. No. 47; Dkt. No. 48 (Defendant Cody Grimes joining in the resistance and adding additional argument)]. For the reasons that follow, Defendants' Motions for Summary Judgment are **GRANTED**.

## I.   STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Introductory Facts

Unless otherwise noted, the following facts are undisputed.[1] On March 20, 2016, at approximately 2:00 am, Officer Grimes and Officer O'Neill of the Des Moines Police Department were dispatched to 1519 Grand Avenue, Apartment 321, regarding a dispute over individuals in the apartment. Grimes arrived first and O'Neill arrived shortly thereafter. Both officers were dressed in their official police uniform, and they met with Charles Young at Apartment 321. Young explained that there were two individuals in the apartment that he wanted removed. After speaking with the individuals, Grimes and O'Neill decided they did not have authority to remove them from the premises, and Young disagreed.[2] Grimes and O'Neill have testified that Young and the male they were talking to were intoxicated. Young became upset that the officers would not remove the two individuals. Young told the officers to "Get the fuck out," and after a few moments the officers began to exit the apartment.

In a subsequent criminal case against Young for crimes arising out of the March 20 events, the Iowa District Court's findings of fact describe the rest of the encounter:

> Officer O'Neill had made it into the common hallway and as Officer Grimes was exiting through the doorway, Mr. Young slammed the door hitting Officer Grimes on the back right side and leg. The force of the door was sufficient to leave a paint transfer on Officer Grimes pant leg.
>
> Officer Grimes proceeded back into the apartment and took Mr. Young to the ground to place him under arrest. A short struggle ensued. Officer Grimes was attempting to gain control of Mr. Young's arms, which were both under him.

---

[1] Unless otherwise noted, undisputed facts are taken from Docket Number 31-1, Defendants' Statement of Undisputed Material Facts; Docket Number 33-1, pp.22–24, Defendants' Appendix (Iowa District Court Findings of Fact and Conclusions of Law); Docket Number 43-3, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts. Undisputed facts are either: 1) undisputed by the parties; or 2) established by the pleadings.
[2] See Dkt. 43-3 ¶ 11.

> Everyone who testified at the trial stated that Officer Grimes was
> yelling, "Give me your arm, stop resisting," multiple times. Officer
> Grimes and Officer O'Neill both testified that Officer Grimes was
> pulling on Mr. Young's arm attempting to gain control of his arm,
> but that Mr. Young was resisting allowing Officer Grimes to gain
> control of his arm. Officer Grimes then delivered 3-4 knee strikes to
> Mr. Young's mid-section. Mr. Young still would not release his arm
> and Officer Grimes jabbed Mr. Young with a closed fist to his right
> side and was finally about to gain control of Mr. Young's arm and
> place him in handcuffs.
>
> As a result of this incident Mr. Young suffered two cracked ribs.

Dkt. No. 33-1, pp. 22–23.

Young admitted in his trial testimony that, prior to his arrest, he was "very upset and maybe a little hyper. . . Went overboard maybe." Young was charged with Interference with Official Acts (a simple misdemeanor) and Assault on Persons in Certain Occupations (a felony), in violation of Iowa Code Sections 719.1(1)(b) and 708.3A(4). On March 20, 2016, District Associate Judge Joseph Seidlin signed an order declaring that there was probable cause to believe Young committed Assault on Persons in Certain Occupations. On April 25, 2016, District Associate Judge William Price declared that the Minutes of Testimony contained "evidence which, if unexplained, is sufficient to warrant a conviction by a trial jury" for Assault on Persons in Certain Occupations. On October 10, 2016, Young went to trial on both charges.

Iowa Rule of Criminal Procedure 2.64 requires criminal defendants in simple misdemeanor cases to demand a jury trial within ten days of pleading not guilty. Young did not demand a jury trial for his simple misdemeanor, but both charges stemmed from the same incident. Therefore, a jury trial was conducted for the Assault on Persons in Certain Occupations charge and the Interference with Official Acts charge was decided by Iowa District Court Judge Gregory Brandt. On October 11, 2016, a jury acquitted Young of the assault charge. On November 3, 2016, the Iowa District Court found Young guilty of the offense of Interference with Official Acts, in violation of Iowa Code Section 719.1(1)(b). By so doing, the Iowa District Court found, beyond a reasonable doubt, that Young: (a) knew Grimes was a peace officer who was attempting to secure an arrest in his official capacity as a police officer; and (b) knowingly resisted or obstructed Grimes in his attempt to secure and arrest Young.

### B. Facts Regarding Employment History of Officer Grimes

Officer Grimes was hired as a Des Moines Police Officer and took the oath of office on July 23, 2007. He received a Certification of Completion from the Iowa Law Enforcement Academy and the Des Moines Police Academy. He was promoted to Senior Officer on August 10, 2009. He was routinely evaluated, and his actions were reviewed administratively by supervisors on multiple occasions pursuant to Des Moines Police Department policy.

On October 13, 2010, Grimes fired his service weapon at an individual outside the KCCI building at 888 9th Street in Des Moines. A Firearms Review Committee was assembled to determine whether the discharge of the firearm was warranted under the circumstances. On November 5, 2010, the Committee unanimously found that Officer Grimes' discharge of his service weapon to protect himself from the threat of the use of deadly force "was in accordance with DMPD Personnel and Administrative Rules Chapter 6 Section O.4[.]" Grimes was evaluated three times in 2011. He received a two-day suspension without pay for inappropriate use of force during an arrest, and, separately, a written instruction from his supervisor that his use of force was not justified. On July 23, 2011, DMPD Officer Andrew Phipps requested assistance from other officers for a wedding he was working. Grimes used force against the groom by striking him in the face and taking him to the ground in the process of arresting him. There was internal investigation. Defendants allege that:

> On October 17, 2001, after interviewing 22 witnesses, reviewing reports, photographs and the totality of the evidence, the internal investigation determined that there was not sufficient evidence to prove or disprove excessive force; citing specifically that the only unbiased witnesses (meaning not friends/family [of the groom] and not police officers) were the two bartenders and their accounts were not consistent with law enforcement. Based on the findings of the internal investigation, no discipline was recommended for Officer Grimes.

Dkt. No. 37, citing City's App'x 164–66. Plaintiff correctly states that the document cited does not list the conclusions of the internal investigation, nor does it list anything related to discipline regarding Grimes. Dkt. No. 43-3 ¶¶ 115, 116. The Court uses the internal memorandum only to establish the fact that an Administrative Review took places regarding the events at the wedding which are summarized in the document. *See* Dkt. No. 34-2, pp. 164–66. A civil law suit claiming excessive force was filed against the City and Grimes by the groom. On February 11, 2014, the

suit was settled for $75,000.

In 2013, Grimes was given an oral reprimand for failing to give guidance to a junior officer driving a squad car. Further, following an incident on December 27, 2013 Grimes was charged with Domestic Assault Causing Injury. Grimes was placed on administrative leave at the time of his arrest and eventually pled to Fourth Degree Criminal Mischief, a serious misdemeanor. Following an internal investigation, Grimes' supervisors recommended to the Chief of Police that Grimes be terminated. The Chief's Guidance Committee separately recommended a two-day suspension. The Chief of Police concluded, "I support the recommendations from your commanding officers that your employment be terminated effective today, June 3, 2014." Dkt. No. 34-2, City's App'x 227–228.

Grimes appealed the termination to the city's Civil Service Commission. On January 22, 2015, the Civil Service Commission overturned the termination and reinstated Grimes. Grimes returned to work on January 26, 2015. At the time of the incident underlying this lawsuit, Grimes had been employed with the DMPD for slightly less than nine years. As detailed above, he was the subject of six internal investigations.

## C.  Facts Regarding the Second Arrest of Charles Young

On April 20, 2018, the Federal Protection Service issued Young a citation for violations of conformity with signs and directions in a federal building after he refused to cooperate with security screening requirements. Young admits that he failed to appear for his federal court date but maintains he was never served with notice of the date.  Due to his failure to appear, a new federal court summons was issued on August 15, 2018, instructing him to appear on October 11, 2018.  On August 20, 2018, the Federal Protection Service contacted the Des Moines Police Department Dispatch Office to request assistance serving the summons on Young. A DMPD dispatcher then ran Young's name through the National Crime Information Center ("NCIC"). An "active" Polk County bench warrant for Charles Young's March 20, 2016 prior arrest appeared. The Polk County District Court had recalled the warrant the same day it was issued, but for unknown reasons, the warrant was not withdrawn from the Polk County NCIC system.

Officers Day and Gallaher were sent to assist the Federal Protection Service in serving Young with the summons and arresting him on the "active" warrant. Officer Day verified the warrant, although Young disputes this fact "to the extent that Defendant Day did everything he could to verify the status of a warrant that was not, in fact, valid." DMPD Dispatcher Allison Ness

5

also contacted Polk County to verify the warrant, noting in her remarks, "Subject is in jail, is this valid?" Polk County Dispatcher Thomas Warburton confirmed that the arrest warrant was valid. Young was arrested, transported to the Polk County Jail, and the subsequent Polk County Citation Worksheet indicated "USMS Detain" and "Fedd" holds on Young.

It is undisputed that both Day and Gallaher knew the federal civil summons was not a warrant for Young's arrest. Polk County Jail staff later reviewed the information and discovered there was an error in their information about the warrant. At that point, Young was released. It is undisputed that Officers Day and Gallaher: (1) worked with Grimes once on an OWI investigation; (2) have only communicated since then when they saw each other at the trial regarding that investigation; (3) don't work in the same building; and (4) were not aware of this lawsuit until they were named as defendants.

Additional disputed and undisputed material facts are set forth below as needed.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis L.L.C.*, 519 F.3d 466, 471 (8th Cir. 2008); *Kountze ex rel. Hitchcock Found. v. Gaines*, 536 F.3d 813, 817 (8th Cir. 2008) ("[S]ummary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law."). In making this determination, the Court must examine the evidence in the light most favorable to the nonmoving party. *See HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 546 (8th Cir. 2007).

To survive a motion for summary judgment, a plaintiff must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "[A]n issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." *Great Plains Real Estate Dev., L.L.C. v. Union Cent. Life Ins., et al.*, 536 F.3d 939, 944 (8th Cir. 2008) (internal citation omitted). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" *Saffels v. Rice*, 40 F.3d 1546, 1550 (8th Cir. 1994) (internal citation omitted). "'[T]he substantive law will identify which facts are material.'" *Guinan v. Boehringer Ingelheim Vetmedica, Inc.*, 803 F. Supp. 2d 984, 993 (N.D. Iowa 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The mere existence of a scintilla of evidence in

support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III.   ISSUE PRECLUSION

Defendants ask for summary judgment on all counts, and Plaintiff resists. The Court must resolve the significant issue of issue preclusion before reaching the summary judgment arguments.

### A.  Arguments of the Parties Regarding Issue Preclusion

The defendants argue that Young was found guilty of Interference with Official Acts by the Iowa District Court in relation to the underlying arrest. They further argue that under the doctrine of issue preclusion this conviction estops Young from disputing Facts 6 through 25 (pertaining to the March 20, 2016 arrest of Young and the subsequent legal proceedings) as listed in their Statement of Undisputed Material Facts. *Maietta v. Artuz*, 84 F.3d 100, 103 (2d Cir. 1996); *Webb v. Voirol*, 773 F.2d 208, 211 (8th Cir. 1985); *Hernandez-Uribe v. United States*, 515 F.2d 20, 21 (8th Cir. 1975), *cert. denied*; 423 U.S. 1057 (1976); *Pena-Cabanillas v. United States*, 394 F.2d 785, 787 (9th Cir. 2011). Under 28 U.S.C. § 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96, 103–05 (1980); *see also* 28 U.S.C. § 1738. In addition, the Eighth Circuit Court of Appeals has previously held that an Iowa District Court conviction of Interference with Official Acts has preclusive effect upon subsequent actions under 42 U.S.C. § 1983. *Grant v. Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989); *see also Cummings v. Malone*, 995 F.2d 817, 825 (8th Cir. 1993) (concluding the same preclusive effect of a prior conviction for assaulting an official under Missouri law). Further, the Northern District of Iowa found that where the underlying criminal case was tried before a judge rather than a jury, the Iowa District Court's ruling has the same preclusive effect on a subsequent § 1983 action. *Shannon v. Koehler*, 2011 WL 10483363, *9, n.10 (N.D. Iowa 2011).

Plaintiff disagrees, asserting that the jury's acquittal of Young for the alleged assault of Officer Grimes is a judgment inconsistent with Judge Brandt's conviction of Young for Interference with Official Acts. Plaintiff argues, "Specifically, any findings of facts related to Plaintiff assaulting Defendant Grimes, including Plaintiff slamming a door . . . and leaving a paint transfer 'stain' on Defendant Grimes['] pant legs would be in direct contradiction to the jury finding Plaintiff not guilty of assaulting Defendant Grimes." Dkt. No. 43-1 (citing to *Shannon*,

2011 WL 10483363 for the proposition that Plaintiff's conviction is "perhaps" relevant to whether Defendants used excessive force). Plaintiff argues that this creates a genuine issue of material fact preventing the Court from issuing summary judgment. Plaintiff further argues that even if Judge Brandt's findings of fact are given preclusive effect, it is not dispositive of the constitutional claims against defendants Grimes and O'Neill related to the March 20, 2016 incident at the Grand Avenue apartment. Plaintiff states that he is not challenging the constitutionality of his arrest, but rather the reasonableness of the force used against him, therefore making Judge Brandt's findings relevant but not dispositive. *See Grant*, 869 F.2d at 1151; *Cummings*, 995 F.2d at 825; *see also Henderson v. Munn*, 439 F.3d 497, 500 (8th Cir. 2006) (noting that while the Eighth Circuit Court of Appeals did not reach the issue for lack of jurisdiction, the District Court found that under Arkansas law, a plaintiff convicted of resisting arrest and obstructing governmental operations was not estopped from arguing that he did not resist arrest in his subsequent § 1983 case).

Defendants point out that while the Iowa District Court made specific findings of fact in convicting Young of violating Iowa Code Section 719.1(1)(b), the jury's verdict states that it finds Young not guilty of the alleged assault but includes no such no findings of fact. Therefore, the verdict's preclusive effect is to state that Young was found not guilty of Assault on Persons in Certain Occupations under Iowa Code Section 708.3A(4). Similarly, the preclusive effect of the Iowa District Court's ruling includes the findings of fact. Young is estopped from disputing those findings under the doctrine of issue preclusion. *Webb v. Voirol*, 773 F.2d 208, 211 (8th Cir. 1985). Further, Defendants state that as a matter of course and common sense, individuals are frequently tried for multiple crimes with different elements based on the same facts and found not guilty on some counts and guilty on others. Even if a jury made findings of fact as to the assault charge, the crimes have different elements, and a ruling of guilty on one is not at odds with a finding of not guilty on another. Simply put, "a jury's verdict of not guilty for assault on a peace officer [does not represent] findings of specific facts on the elements of interference with official acts." Dkt. No. 47-1.

### B.  Legal Standard for Issue Preclusion

In *Allen v. McCurry*, the Supreme Court held that "federal courts generally have also consistently accorded preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95–96 (1980) (citing *Montana v. United States*, 440 U.S. 147 (1979); *Angel v. Bullington*, 330 U.S. 183 (1947)). The Court noted, "res judicata and collateral estoppel not only reduce

unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system. *Id*. (citing *Younger v. Harris*, 401 U.S. 37, 43–45 (1971). Further, while "federal appellate court decisions have spoken with little explanation or citation in assuming the compatibility of § 1983 and rules of preclusion . . . the statute and its legislative history clearly support the court' decisions." *Id*. at 97 (collecting cases and tracing legislative history of 42 U.S.C. § 1983). "There is, in short, no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." *Id*. at 103–104.

The Eighth Circuit Court of Appeals ruled on this issue in two notable cases: *Grant v. Farnsworth* and *Cummings v. Malone*. *Grant v. Farnsworth*, 869 F.2d 1149, 1151 (8th Cir. 1989); *Cummings v. Malone*, 995 F.2d 817, 825 (8th Cir. 1993); *but see Henderson v. Munn*, 439 F.3d 497, 500 (8th Cir. 2006) (holding the Circuit Court lacked jurisdiction over the appeal of a District Court ruling that under Arkansas law, a plaintiff convinced of resisting arrest and obstructing governmental operations was not estopped from arguing that he did not resist arrest in his subsequent § 1983 case). In *Grant*, the Eighth Circuit held, "Evidence of Grant's conviction for interference with official acts is relevant to this [§ 1983] action because it precludes the relitigation of the facts and issues that were necessary for the state court jury to convict Grant." *Grant*, 869 F.2d at 1151 (citing *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979)). In *Cummings*, the Eighth Circuit held, "refusing to allow appellants to introduce Cummings' prior conviction would improperly allow him to contest in this case a fact conclusively decided against him in the earlier criminal case." *Cummings*, 995 F.2d at 825 (citing *Grant*, 869 F.2d at 1149). *Grant* involved Iowa law, and *Cummings* involved Missouri law. The Circuit Court viewed the two as sufficiently similar for *Grant* to support its ruling in *Cummings*.

The Eighth Circuit Court of Appeals did not discuss the Supreme Court's decision in *Allen* in reaching its conclusions about *Grant* or *Cummings*, but the holdings "appear consistent with an analysis under *Allen*." *Shannon v. Koehler*, 2011 WL 10483363, at *12 (N.D. Iowa Sept. 16, 2011). The question, then, is whether Iowa courts would give preclusive effect to a prior conviction in a subsequent civil case. *Id*. at *12 (citing *Grant*, 869 F.2d at 1151). The Iowa Supreme Court examined the issue in *Dettman v. Kruckenberg*, 613 N.W.2d 238 (Iowa 2000) (holding that conviction for vehicular homicide should be afforded preclusive effect in a subsequent wrongful

death case). In *Dettman*, the Court held that "in appropriate cases a criminal conviction may be preclusive in a later civil suit as to those issues that were previously litigated in the criminal proceeding." *Id*. at 248. Under Iowa law, the doctrine of issue preclusion is met if:

> (1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment.

*Id*. at 244 (quoting *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.*, 562 N.W.2d 159, 163–64 (Iowa 1997)).

The Iowa Supreme Court stated, "We will not show such lack of faith in the criminal judicial system to allow an issue fully and fairly litigated in a criminal trial to be completely relitigated in a civil trial." *Dettman*, 613 N.W.2d at 249 (citation and internal quotation marks omitted) (noting that Iowa law does not permit convictions under the traffic code to be admitted as evidence in a civil case, but the legislature has not created such a provision for other sections of the criminal code). In *Shannon*, the court concluded that "Iowa law supports the Eighth Circuit Court of Appeals' decision in *Grant*." *Shannon*, 2011 WL 10483363, at *12 (citing *Grant*, 869 F.2d at 1151) (*see also Graack v. Borough of Nazareth*, 852 F.Supp. 370, 371–72 (E.D.Pa.1994) (concluding that the plaintiff's convictions for disorderly conduct and resisting arrest arising from the alleged excessive force incident were admissible in the subsequent § 1983 case because, applying *Allen*, the convictions would have been admissible under Pennsylvania law, which allows convictions other than traffic offenses to be used as evidence in subsequent civil proceedings).

### C.  Young Is Estopped From Disputing the Iowa District Court's Findings of Fact Under the Doctrine of Issue Preclusion

Pursuant to the analysis set forth by the Iowa Supreme Court, the Eighth Circuit Court of Appeals, and the Supreme Court, Young is estopped from disputing the Iowa District Court's findings of fact under the doctrine of issue preclusion. The Iowa District Court (Judge Gregory Brandt) convicted Young of Interference with Official Acts under Iowa Code Section 719.1(1)(b) and made findings of fact in the course of the ruling. This Court holds that the Iowa District Court ruling has preclusive effect upon the present case. First, in both the criminal case and in the instant civil case, a relevant consideration in determining the reasonableness of the use of force is whether and how Young resisted arrest. Second, the issues of whether and how Young resisted arrest were

raised in the prior trial. Third, the issues of whether Young resisted arrest and how he did so were material and relevant to the disposition of the prior action. Finally, the determination that Young resisted arrest and the manner in which he did so was necessary and essential to that conviction, as it is clear that Judge Brandt based his order on those findings.

Plaintiff argues that Judge Brandt's findings of fact cannot have preclusive effect because they conflict with the jury's verdict acquitting Young of another offense. He further argues that the factual conflict between the two verdicts defeats summary judgment in favor of the Defendants. Young was acquitted of Assault on Persons in Certain Occupations pursuant to Iowa Code Section 708.3A(4), and he was convicted of Interference with Official Acts  in violation of Iowa Code Section 719.1(1)(b). The Court holds that there is no factual conflict between the two verdicts because the offenses fall under distinct Iowa Code sections and have wholly independent, distinct elements.

## IV.   ANALYSIS

### A.  Qualified Immunity

"Qualified immunity shields government officials from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Id.* at 496. As noted by the Eighth Circuit Court of Appeals, "[t]he Supreme Court has generously construed qualified immunity to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### B.  Counts I and II

In Counts I and II, Young alleges that his Fourth Amendment right to be free from excessive, unreasonable, and unjustified force during an encounter with the police was violated when: (1) Officer Grimes intentionally inflicted pain by throwing Young to the ground and repeatedly kneeing him in the rib cage; (2) the City showed deliberate indifference by failing to properly train, supervise, and discipline Grimes; and (3) O'Neill failed to intervene and stop Grimes' actions. These claims are made pursuant to 42 U.S.C. § 1983.

The Court must first decide whether Grimes is entitled to qualified immunity as to Count I of the Complaint. If Grimes did not violate a clearly established constitutional or statutory right, then neither the City nor O'Neill did so. The initial inquiry is whether the facts support Young's contention that Grimes violated his Fourth Amendment right to be free from excessive force during the course of an encounter with the police. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force."). To evaluate claims that government agents used excessive force in violation of the Fourth Amendment, an objective reasonableness standard is used which questions "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 396. The reasonableness of an officer's use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This inquiry takes into account the "spilt-second decisions" that officers are often forced to make in "circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 397. "Circumstances relevant to the reasonableness of the officer's conduct include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Brown*, 574 F.3d at 496 (quoting *Graham*, 490 U.S. at 396).

Given the facts as established by the Iowa District Court, the Court can say as a matter of law that Grimes did not violate Young's right to be free from excessive force during an encounter with the police. When Grimes turned around after being struck by the door, he did not know whether Young was armed or whether he had easy access to a weapon in his apartment. He knew that there had already been conflict between the police and the men in the apartment, that Young was intoxicated, and that Young was, in his own words, "very upset and a little hyper. Went overboard maybe." Further, Young had just slammed a door into Grimes.

Grimes' first use of force was to take Young to the floor. Grimes' second use of force was to use knee strikes and a jab with his closed fist to gain control of Young's arms. Grimes told Young to let him have control of his arms multiple times, but Young continued to resist even as Grimes deployed knee strikes. Finally, Grimes jabbed Young in his side and Young allowed himself to be put in handcuffs. Considering the immediate threat to Grimes, O'Neill, and the men

in the apartment, effectuating an arrest by taking Young to the floor was reasonable in these circumstances. *See Anderson v. City of Hopkins*, 805 F.Supp. 3d 712, 721 (D. Minn. 2011); *Lacy v. City of Bolivar*, 416 F.3d 7132, 727 (8th Cir. 2005). Additionally, there is no right to resist arrest because "adequate legal protection exists against unlawful searches and seizures." *Hodgon v. United States*, 365 F.2d 679, 685 (8th Cir. 1966). Young knew Grimes and O'Neill were police officers because he had called them there via 911 and because of their uniforms, and "a person may not resist an arrest reasonably effected by one whom the arrestee knowns or has good reason to know is a peace officer, despite legality or illegality of arrest. *State v. Thomas*, 262 N.W.2d, 607, 611 (Iowa 1978). Bearing in mind all the above, Grimes' actions were objectively reasonable as a matter of law, and he is entitled to qualified immunity as to Counts I and II. Consequently, as a matter of law, O'Neill was not required to intervene and the City's training, supervision, and discipline of Grimes were not deficient. Defendants' request for summary judgment on Counts I and II is **GRANTED**.

### C.  Counts III and VI

In Counts III and VI, Young alleges that his First Amendment right to be free from retaliation when engaging in protected speech and filing a federal lawsuit against Defendants was violated when: (1) Grimes and O'Neill subjected him to excessive force in retaliation for Young expressing his belief the officers were "not doing their job;" and (2) Day, Gallaher, and the City subjected him to a false arrest in retaliation for Young filing this federal lawsuit.

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on a First Amendment retaliation claim, the plaintiff must show that he engaged in protected activity, that the defendants' actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012). In the Eighth Circuit, a plaintiff must show that a defendant had an impermissible motive and he must plead and prove the absence of probable cause. *Hartman v. Moore*, 547 U.S. 250, 265 (2006).

There is no evidence in the record to show Officers Grimes and O'Neill had an impermissible motive for arresting Young, and he has not proven the absence of probable cause. The Court assumes without deciding that Young's instruction to "Get the fuck out" is protected

speech. It is undisputed that when Young gave the officers that instruction, they began to leave the apartment. Their only reaction to Young's profanity was to follow his instruction. Officer O'Neill was able to fully exit, but Officer Grimes was impeded by Young slamming the door on his pant leg. But for Young's decision to slam the door, Officer Grimes would have left the premises. Once Young slammed the door on Officer Grimes, the officers had probable cause to effectuate an arrest. Plaintiff's First Amendment retaliation claim fails.

At times, courts including the Eighth Circuit Court of Appeals have held that First Amendment excessive force claims should be analyzed under the Fourth Amendment. *See Anderson v. Franklin City, Mo.*, 192 f.3d 1125, 1132 (8th Cir. 1999) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that excessive force retaliation claims more closely invoke the protections of the Fourth Amendment than the First Amendment)). If analyzed under the Fourth Amendment, the qualified immunity analysis in section III.B applies, and Young's claim fails. Defendants' request for summary judgment on Count III is **GRANTED**.

Then, in Count VI, Young claims that the City, Day, and Gallaher subjected him to a retaliatory false arrest for filing this lawsuit in violation of his First Amendment rights. "[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001) (citing *Anderson v. Franklin County*, 192 F.3d 1125, 1131 (8th Cir. 1999)). As to any false arrest claim under Iowa law, "[t]he essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678–679 (Iowa 1983) (internal citations omitted). An officer can make a warrantless arrest if he has a "reasonable ground for believing that the person to be arrested has committed it." *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984).

Young has not demonstrated that Day, Gallaher, or the City have a retaliatory animus. The officers verified the warrant, Dispatcher Ness verified the warrant, and Dispatcher Warburton confirmed the validity of the warrant. Although Young said that he thought the warrant had been taken care of, Officer Gallaher explained that, "A majority of people I arrest for warrants say they don't have a warrant." There is no dispute that the officers understood the purpose of the federal civil summons as opposed to an arrest warrant. Officers Day and Gallaher were unaware of this lawsuit until they were named as defendants. Given the above, Young has not pled facts upon which a reasonable jury could find that Defendants acted with a retaliatory animus, and Defendants

have established probable cause through their objectively reasonable belief in the validity of the warrant.

The cases Young cites are inapposite to the facts of this case. *See California v. Ramirez*, 668 P.2d 761 (Cal. 1983) (holding that fruits of a search dependent on an invalid warrant are inadmissible); *Morrison v. Lambie*, 2009 WL 688910 (W.D. Penn. 2009) (holding that serving a previously-issued warrant without checking its present validity was unconstitutional); *Wilson v. City of Boston*, 421 F.3d 45 (1st Cir. 2005) (granting qualified immunity because the officer's actions were objectively reasonable); *Berg v. County of Allegheny*, 219 F.3d 261, 273 (3d Cir. 2000) (denying qualified immunity to the arresting officer in the face of voluminous and obvious factual information challenging the validity of the arrest warrant). It was objectively reasonable for Day and Gallaher to effectuate the arrest of Young. Defendants' request for summary judgment on Counts VI is **GRANTED**.

### D. Count IV

In Count IV, Young alleges negligent hiring, retention, and supervision against the City of Des Moines regarding Officer Grimes. Young alleges that the City knew "of [Grimes'] past misdeeds within and outside the force[,]" and he alleges that it was negligent or reckless of the City to not terminate or properly supervise Grimes.

Plaintiff is suing the city pursuant to 42 U.S.C. § 1983 under a common theory of municipal liability, "namely that the City of Des Moines failed to properly supervise and/or discipline" Grimes given his history. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "A municipality may be liable under § 1983 when an official municipal policy or custom caused a violation of a plaintiff's substantive due process rights." *Russell v. Hennepin County*, 420 F.3d 841, 846 (8th Cir. 2005). "Before a municipality can be held liable, however, there must be an unconstitutional act by a municipal employee," but a municipality is not liable for the negligent acts of its employees. *Id.* To establish a claim for "custom" liability, Plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> 2) Deliberate indifference to or tacit authorization of such conduct by the

governmental entity's policymaking officials after notice to the officials of that misconduct; and
3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas County Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013).

Here, the record does not show, nor does Young specifically allege, a continuing, widespread, persistent pattern of unconstitutional misconduct. In fact, there are no allegations pertaining to anyone but the defendants, in particular Officer Grimes. At best, the record shows that the DMPD responded in accordance with its regulations when Officer Grimes was accused of violating department policy. Six violations over nine years—two of which involve excessive force—does not amount to a continuing, persistent, widespread pattern of misconduct. Further, the DMPD's responsiveness to each violation is the antithesis of deliberate indifference or tacit approval—following diligent investigations, Grimes received punishment ranging from oral admonishment to termination. The record shows no custom of deliberate indifference to constitutional violations, particularly in the period between his reinstatement and this incident. Defendants' request for summary judgment on Count IV is **GRANTED**.

### E.  Count V

In Count V, Young alleges that Grimes assaulted and battered him by repeatedly striking Young in the knees. He claims that the acts of assault and battery were willful, wanton, and reckless and directed at Young as an individual. Iowa Code section 804.8 states in part: "A peace officer, when making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest." Iowa Code § 804.8. Iowa courts have found that "the 'reasonableness' inquiry in Iowa Code section 804.8 is an objective standard." *Chelf v. Civil Service Com'n of City of Davenport*, 515 N.W.2d 353, 355 (Iowa Ct. App. 1994). The Iowa courts have found support for this interpretation in *Graham v. Connor*, 490 U.S. 386, 395 (1989). *Id.* Further, Iowa Code section 670.4 exempts from liability:

> Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code § 670.4. Because the Court determined as matter of law that Grimes did not use

excessive force in effectuating his lawful arrest of Young in violation of his constitutional and statutory rights, the Court finds there is no genuine dispute as to whether Grimes' actions constitute assault and battery in violation of both or either § 1983 and Iowa Code Section 804.8. Defendants' request for summary judgment on Count V is **GRANTED**.

### F.  Count VII

In Count VII, Young alleges that Day, Gallaher, and the City violated his clearly established right to be free from unreasonable seizure of his person under the Fourth and Fourteenth Amendments to the United States Constitution when they arrested Young or allowed him to be arrested without probable cause or a reasonable basis.  These claims are made pursuant to 42 U.S.C. § 1983. Officers Day and Gallaher are immune from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have know or it was objectively reasonable for the officer to believe so. *Anderson v. Creighton*, 483 U.S. 635 (1987). The officers must show that it was objectively reasonable for them to believe their arrest of Young did not violate his clearly established constitutional rights, which is established when "officers of reasonable competence could disagree as to the legality of the defendant's actions." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The City is immune from liability if "deliberate action attributable to the municipality itself is [not] the 'moving force'" behind Young's deprivation of rights. *Bd. Of Cty Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694)). Young must demonstrate "the requisite degree of culpability" and "a direct causal link between" the City's actions and the deprivation of his rights.

For the same reasons stated in section III.C, Officers Day and Gallaher had an objectively reasonable believe that the arrest warrant was valid and that they were not depriving Young of any federal right. It follows that they did not unreasonably seize his person in violation of the Fourth or Fourteenth Amendments. The officers are entitled to qualified immunity as a matter of law. It is undisputed that the motivating force behind Young's second arrest was the "valid" arrest warrant present in Polk County's NCIC system. There is simply no evidence in the record that the City took any deliberate action that caused the warrant to appear active when it should not have. Defendants' request for summary judgment on Count VII is **GRANTED**.

## V.      CONCLUSION

Defendants' Motions for Summary Judgment are **GRANTED** in full.


Upon the foregoing,

**IT IS ORDERED** that Defendants' Motions for Summary Judgment are **GRANTED**. The Clerk of Court shall enter judgment for the Defendants.


**DATED** this 13th day of August, 2019.

JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA